UNITED STATES v. GUERLAIN, INC. (No. 4305)[1]

---

[1] C. A. D. 146.

United States Court of Customs and Patent Appeals, October 28, 1940

*Charles D. Lawrence*, Acting Assistant Attorney General (*Samuel D. Spector*, Special Attorney, of counsel), for the United States.

*B. A. Levett* for appellee.

[Oral argument October 3, 1940, by Mr. Spector and Mr. Levett]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, in reappraisement 117493–A.

Merchandise, consisting of certain empty perfumery bottles of distinctive design and bearing the name Guerlain, manufactured in France and imported into the United States at the port of New York, was entered by the importer (appellee), in accordance with the provisions of section 503 (b) of the Tariff Act of 1930, at the invoice values plus certain additions thereto to meet advances made by the appraiser in a similar case then pending on appeal for reappraisement (*Guerlain, Inc.* v. *United States,* reappraisement 114400–A), in which the importer's contention was sustained in a final decision by the United States Customs Court—Reap. Dec. 4290. (The record in that case was made a part of the record in the instant case.)

All of the involved bottles, except those invoiced as item 533, were appraised at the entered values. The local appraiser, however, advanced the entered values on those invoiced as item 533.

It is conceded by counsel for the parties that the merchandise has no foreign, export, or United States value, and that the proper dutiable value is the cost of production, as defined in section 402 (f) of the Tariff Act of 1930, which reads:

SECTION 402. VALUE.

\* \* \* \* \* \* \*

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

It appears from the record that some of the bottles in question were manufactured by Verreries Pochet et du Courval (hereinafter designated Pochet), and the others by Cristalleries de Baccarat (hereinafter designated Baccarat), and that both of those concerns are bottle manufacturers, located in France.

It further appears from the record that the importer is an American corporation, located in New York; that it is engaged in the sale and distribution of perfumes and toilet preparations which it purchases

from Société Guerlain of Paris, France; and that it is the sole distributor in the United States of such perfumes and toilet preparations.

It was contended by counsel for the Government both before the trial court and the appellate division of the Customs Court, and it is their contention here, that, although some of the involved bottles were actually manufactured by Pochet and the others by Baccarat, the manufacturer or producer of the bottles in question, within the purview of section 402 (f), *supra*, is the Société Guerlain of Paris; that, therefore, the local appraiser was right in appraising them at their invoice values "plus 20 per centum for general expenses and 15 per centum for profit of Guerlain of Paris, as the manufacturer of the bottles"; and that the issues in this case are controlled by the decision of this court in the case of *Lionel Trading Co., Inc.* v. *United States,* 24 C. C. P. A. (Customs) 432, T. D. 48900. No contention is made here by counsel, however, that the invoice values of the involved articles do not correctly represent the cost of production, as defined in section 402 (f), *supra,* should it be held that Pochet and Baccarat are the manufacturers or producers of the involved bottles within the purview of that section.

In the third assignment of error in this court it is claimed by counsel for the Government that the appellate division of the Customs Court erred in "sustaining the trial court in its exclusion from evidence of the patents offered in evidence by the Government, which were marked for identification, and in not admitting the same (S. M. p. 63, Reappraisement 114400–A)."

The patents referred to *were not offered in evidence in the instant case.* They were offered in evidence, however, and excluded by the trial court in the test case (*Guerlain, Inc.* v. *United States, supra,*) and, on appeal, the appellate division of the Customs Court held that they were properly excluded and affirmed the trial court's judgment. No appeal having been taken to this court in that case, the judgment of the appellate division of the Customs Court, holding the patents to be inadmissible in evidence, became final and conclusive of that issue. *United States* v. *Elliott, Greene & Co. et al.,* 28 C. C. P. A. (Customs) 177, C. A. D. 141, decided July 1, 1940.

The trial court and the appellate division of the Customs Court concurred in holding that it had been established by the evidence in the instant case that the Société Guerlain of Paris does not own any of the capital stock of appellee and that the two concerns are entirely separate and independent; that the only relationship existing between the Société Guerlain of Paris and the bottle manufacturers, Pochet and Baccarat, is that of purchaser and seller of Guerlain bottles; that the only relationship existing between Guerlain, Inc., of New York and the bottle manufacturers, Pochet and Baccarat, is that of purchaser and seller of bottles; that occasionally when appellee orders

a very small quantity of Guerlain bottles, the Société Guerlain of Paris fills such orders from its own stock, in which instances it charges the price it paid, plus overhead and profit (the involved bottles, however, were not supplied by the Société Guerlain from its stock); that, owing to the fact that the involved and like bottles are designed solely for the Société Guerlain's perfume, there exists a "gentlemen's agreement" between the manufacturers of Guerlain bottles and the Société Guerlain that the manufacturers shall sell such bottles to such concerns only as are approved by the Société Guerlain; that to such concerns, however, the bottle manufacturers may and do sell direct; that the molds for the Guerlain bottles "are ordered, made, and paid for" by the bottle manufacturers and are owned by them; and that, as stated by the Treasury representative (Exhibit No. 6):

Orders for bottles are either sent by Guerlain Inc. of New York directly to the bottle makers, or they are sent to Guerlain of Paris. In the latter case, the Paris perfumer passes the order on to the bottle manufacturer and, there, his part of the transaction ends. Shipment is made by the bottle maker directly to Guerlain Inc. of New York, and Guerlain of Paris do not see, wash, inspect or pack the bottles. No addition is made to the bottle manufacturer's price for any commission, royalty, overhead or profit of Guerlain of Paris. The bottle manufacturer bills directly to Guerlain Inc. of New York and is paid by the latter firm.

That there is substantial evidence to sustain the findings of fact of the appellate division of the Customs Court cannot be seriously questioned.

The question presented here is whether, on the facts as hereinbefore set forth, Pochet and Baccarat are the manufacturers or producers of the involved bottles, within the purview of section 402 (f), *supra*, as held by the trial court and the appellate division of the Customs Court, or whether the Société Guerlain of Paris is the manufacturer or producer of such bottles, as claimed by counsel for the Government.

In the case of *Lionel Trading Co., Inc.* v. *United States, supra*, relied upon here by counsel for the Government, it appeared that certain paper boxes and glass bottles, imported into the United States from France, were produced by certain manufacturers in France for Parfums Corday of Paris (hereinafter designated Corday), and were shipped by the latter concern to the Lionel Trading Co., Inc., its sole agent in the United States; that the designs for the boxes and the molds used in making the bottles were owned by Corday; that the boxes and bottles were manufactured for the exclusive use of Corday; and that the manufacturers could not sell them to any other concern. It further appears from the decision in that case that Corday included in its sales price a profit of 28 per centum " 'to cover the purchase of the imported merchandise and for permission on the part of the importer to have the sole use in the United States of the name "Corday" and to cover the permission to use the special designs in packing, etc.,

of perfumes and toilet articles which had through advertisements secured a world wide reputation.' "

We there held that the manufacturers of the boxes and bottles were subcontractors; that Corday was the manufacturer or producer, within the purview of section 402 (f), *supra;* and that the 28 per centum, included in the sales price by Corday, was properly added to the entered value to make cost of production as defined in section 402 (f), *supra.*

In that case the merchandise was manufactured for the exclusive use of Corday. The molds for the bottles were owned by Corday. The merchandise was packed and shipped by Corday. Corday made a charge of 28 per centum as a profit for its service in handling the merchandise and for the sole use by the importer of the name "Corday" in the United States, and for the use by the importer of " 'special designs in packing, etc., of perfumes and toilet articles.' " No such facts appear in the instant case.

Although it is true that in the instant case the bottle manufacturers, Pochet and Baccarat by a "gentlemen's agreement," sell bottles to such concerns only as are approved by the Société Guerlain of Paris, and although it may be true that the Société Guerlain of Paris owns design patents for the bottles here involved, those facts, in our opinion, in view of the other facts and circumstances of record, hereinbefore set forth, are not of sufficient importance to warrant a holding that the Société Guerlain of Paris is the manufacturer and producer of the involved bottles, within the purview of section 402 (f), *supra.*

We have given careful consideration to the arguments presented here by counsel for the Government, but are of opinion, as was the trial court and the appellate division of the Customs Court that Pochet and Baccarat are the manufacturers and producers of the involved bottles, within the purview of section 402 (f), *supra.* Accordingly, the judgment of the appellate division of the Customs Court is affirmed.